J. W. WELLS LUMBER COMPANY TRUST A, A. C. WELLS, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. W. WELLS LUMBER COMPANY TRUST B, A. C. WELLS, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 97134, 97135. Promulgated May 21, 1941.

*Meredith P. Sawyer*, Esq., for the petitioner.
*Gerald W. Brooks*, Esq., for the respondent.

552

TYSON: The petitioners assail the determination of the respondent that the trusts were associations and taxable as corporations, on the grounds (1) that the trusts were created and operated for the sole purpose of liquidating the assets conveyed to them by the corporation, and (2) that their organization in form bears no resemblance to that of a corporation.

Whether a trust is taxable as a corporation depends upon whether it is an "association" within the provision of the applicable revenue act which defines the term "corporation" as including "associations." The meaning of that provision was considered by the Supreme Court in 1935 in *Morrissey* v. *Commissioner*, 296 U. S. 344; and in the companion cases of *Swanson* v. *Commissioner*, 296 U. S. 362; *Helvering* v. *Combs*, 296 U. S. 365; and *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369. In the leading *Morrissey* case the Court said that, in order to be taxable as an association, the trust must have been created as a joint enterprise for the carrying on of a business and sharing the profits; and that in form of organization it must resemble a corporation. Attributes of a trust having such resemblance to corporate form were enumerated in effect as (1) trustees, as a continuing body with provision for succession, and holding title to property; (2) centralized management; (3) continuity unaffected by the death of beneficiaries; (4) transferability of interests without affecting the continuity of the enterprise; and (5) limitation of personal liability of the participants. See *Commissioner* v. *Rector & Davidson*, 111 Fed. (2d) 332; *Del Mar Addition* v. *Commissioner*, 113 Fed. (2d) 410, affirming on this point, *Del Mar Addition*, 40 B. T. A. 833.

Creation for a business purpose is necessary to classification as an association. If the trust is created for purposes other than the conduct of a business for profit, such as for instance for the complete liquidation of its assets, and its business activity is merely incidental to the preservation of the property held, it is not taxable as an association even though in form its organization is similar to that of a corporation. *United States* v. *Davidson*, 115 Fed. (2d) 799; *Cleveland Trust Co.* v. *Commissioner*, 115 Fed. (2d) 481; *Helvering* v. *Washburn*, 99 Fed. (2d) 478; *Sears* v. *Hassett*, 111 Fed. (2d) 961. Also, while similarity or dissimilarity to corporate form is often considered in granting or denying classification of a trust as an association, such similarity or dissimilarity has been given minor consideration in some cases. *Commissioner* v. *Vandergrift R. & Inv. Co.*, 82 Fed. (2d) 387; *Helvering* v. *Washburn*, *supra; Porter Property Trustees, Ltd.*, 42 B. T. A. 681. In other cases, the *Morrissey* opinion has been interpreted as not requiring the presence in

an association of all the attributes of corporate form mentioned in that opinion, but only as requiring that the form of the alleged association be compared with all of such attributes for the purpose of determining whether its form more nearly resembles that of a corporation than that of a partnership or a pure trust. *Commissioner* v. *Brouillard*, 70 Fed. (2d) 154; *Bert* v. *Helvering*, 92 Fed. (2d) 491; *Commissioner* v. *Rector & Davidson*, *supra; Commissioner* v. *Horseshoe Lease Syndicate*, 110 Fed. (2d) 748; *Del Mar Addition*, *supra; Porter Property Trustees, Ltd.*, *supra*.

The petitioners, in order to support their contention that the two trusts were created and operated for the sole purpose of liquidating their respective assets, have shown certain circumstances surrounding the creation of the trusts and their activities throughout their existence, and they rely further upon oral testimony of the trustee that the parties merely intended to liquidate the assets formerly belonging to the corporation.

The purpose for which the trusts were created, as was pointed out by the Supreme Court in *Helvering* v. *Coleman-Gilbert Associates*, *supra*, is found in the agreement of the parties, and the parties are not at liberty to say that such purpose was other than that which is formally set forth in those written instruments. To the same effect, see *Commissioner* v. *Vandergrift R. & Inv. Co.*, *supra; Title Insurance & Trust Co.* v. *Commissioner*, 100 Fed. (2d) 482; and *Sears* v. *Hassett*, *supra*. In *Commissioner* v. *Gibbs-Preyer Trusts Nos. 1 & 2*, 117 Fed. (2d) 619, the Circuit Court of the Sixth Circuit rejected the contention that the purpose of the creation of the trust must be determined solely from the language appearing in the trust instrument, and said that the crucial test must be found in what the trustee actually does rather than in the existence of powers long unused by him. In the present cases, the actual activities of the trustee were not any narrower than the powers conferred upon him by the trust instruments. Whether we look to the terms of the written instruments alone or whether we consider the question from the standpoint alone of the actual activities of the trustee in carrying out the trusts, the same result is reached, for under either test the facts fully support the conclusion that the trusts were created for the purpose of carrying on business for profit.

While each of the trust deeds conveys assets pertaining to a separate branch of the business of the corporation whose life was about to expire, neither manifests any intention to liquidate. The paragraph in the deeds fixing the life of each trust gives the trustee absolute discretion to continue or dissolve the trust at any time during his life, or to liquidate it in part, with like discretion in his successors. In other words, it authorized continuation of the business or distribution of the corpus in kind, or continuation of the business after

a partial distribution; and, when considered in connection with the enumerated powers of the trustee, the conclusion is inescapable that the deeds intend continuance of the business and a liquidation thereof only if and when the trustee should elect to do so. Under those enumerated powers the trustee had the right to sell, assign, mortgage, or convey the assets—powers which, standing alone, might be classed as incidental business powers—but he had the additional powers to exchange property, to expand or reduce the operations at will, to engage necessary employees, and to borrow money; and, by virtue of his specific right to lend the assets and income of one trust to the other without security, the trustee could have loaned the funds of trust B to trust A and used same to acquire additional timberland or other assets for trust A, or loaned the funds of trust A to trust B, as he did, to carry on the manufacturing activities of trust B. Moreover, the fact that the deeds conveyed the right to use the name and the goodwill and "going business value" of the transferor corporation is consistent only with an intention on the part of the trusts to remain in business. Goodwill can not be disposed of as an asset independently of the business to which it relates. *Metropolitan Bank* v. *St. Louis Dispatch Co.*, 149 U. S. 436, 446.

Trust A was engaged continuously over the period from 1933 to 1940 in selling its timber and timberlands. It was making loans during several of these years, without security, from the proceeds of these sales to trust B, the beneficiaries of which were the same as the beneficiaries of trust A, and of interests in identical proportions. All its other funds were retained, with the exception of small distributions to the beneficiaries and some small investments. We think these facts are not only inconsistent with an intention to liquidate, but that they establish that the activities of the trust constituted a business carried on for profit; and it is immaterial even if it was so contemplated that all the timber and timberlands would be sold and no additional lands were acquired. *Morrissey* v. *Commissioner, supra; United States* v. *Rayburn*, 91 Fed. (2d) 163.

The petitioners suggest in the case of trust A, that two-thirds of the timber and timberland had been sold before December 31, 1932, the date of the creation of the trust, and assert that the only function of the trust was to collect the outstanding proceeds and dispose of the unsold residue. There is no support for any such assertion in the record. The trustee was unable to state how much timber or land was sold in any one year and no other witness gave such information. Forty to fifty million feet of timber were on hand in 1931 and the returns in evidence disclose that as much as sixteen million feet were sold in 1934 and 1936.

In the case of trust B, the activities on its behalf unquestionably constituted the carrying on of a business for profit. The only differ-

erence between its activities and those of the precedent corporation was that they were carried on in a reduced volume, and, in lieu, of securing logs from timberlands owned, it purchased them in the market. Its business was buying raw materials, manufacturing them, and selling the finished product. The assertion of petitioners that this was done not for profit but solely to secure better prices for the timber on the timberlands belonging to trust A is inconsistent with the fact that the plant acquired by the trust in 1932 was enlarged in 1936, that the operations after the acquisition of the plant by the trust were expanded rather than contracted, and that in 1940 the plant was still in operation and no effort had been made to liquidate. The petitioners concede that there was some profit. They have produced no evidence of sales or expenses of this trust, and the returns show only combined income and expenses of the two trusts which increased over the period 1934 and 1936. The net result of operations of both trusts as shown on the returns was affected by large deductions for depletion on sales of timber in two of those years. However, the annual labor costs of the two trusts increased from $26,000 in 1934 to $44,000 in 1936, and, since little labor was hired by trust A, this further indicates that there was expansion by trust B. The trustee has never made any distribution either from income or proceeds of sales of this trust.

We are of the opinion that trusts A and B were created and operated for the purpose of carrying on business for profit.

The petitioners' next contention is that the organizations in form bear no resemblance to that of a corporation. The title to the property of each trust was held by the trustee as a continuing body, with provision for successors, during the life of the trust, and the exclusive management was delegated to him for the duration of the trust. The fact that there were no formal directors' meetings or that the beneficiaries had no voice in the management or did not exercise control is not determinative. The trustee conducted the affairs of the trusts and the parties in interest secured centralized management when, in the trust agreement executed by the corporation in which they were stockholders, the trustee was designated as their representative. *Helvering* v. *Coleman-Gilbert Associates, supra; Helvering* v. *Combs, supra.* The continuity of the enterprise was not affected by the death of any beneficiary. The deeds do not so expressly provide, but, on the contrary, provide for termination only at the death or pleasure of the trustee or his successor and that the trustee may expand or reduce the operations at his will. There is no specific restriction in the deeds upon the transferability of the beneficial interests nor any express limitation of personal liability of the beneficiaries; but the silence of the agreements in these particulars is not enough to prevent classification as an association. *Del Mar Addition* v. *Commissioner, supra; Bert* v. *Helvering, supra.*

The failure to include in the trust deeds a limitation on the personal liability of the beneficiaries was apparently due to the fact that it was considered that the property held by the trusts was sufficient to meet their liabilities and that the beneficiaries would never be called on to pay any of such liabilities. *Del Mar Addition* v. *Commissioner*, *supra*. As to matters of form the real test is resemblance, not identity; and, when the facts are considered in this light, we think the trusts sufficiently resemble a corporation to bring them within the statute.

We hold that the trusts are associations and taxable as corporations.

With respect to the loans by trust A to trust B, it is contended that if the trusts are taxable as corporations, trust B should be allowed deductions for interest thereon. Interest was computed on the monthly balances by an accountant, at the legal rate of interest under the law of Michigan, and deductions are claimed in the amounts of $2,716.59 for 1934, $3,400.13 for 1935, and $5,746.43 for 1936. No portion of these latter amounts was charged on the books of the trust. But this computation of the accountant was based on the assumption that trust B was obligated to pay interest on the loans. It does not however appear that trust B was so obligated, and the issue was not raised by the pleadings. The accountant, the only witness testifying as to this interest, did not know whether any agreement existed for payment of interest on such loans, and the evidence does not otherwise establish one or that the loans from trust A to trust B, for any other reason, bore interest. Since the claimed deductions of interest are not in issue and it also does not appear that any interest was paid, or agreed to be paid, or that the loans, for any other reason, bore interest, the claimed deductions for such interest are denied. *Hundahl* v. *Commissioner*, 118 Fed. (2d) 349.

The petitioner in Docket No. 97134 assigns error in the disallowance of a deduction of $11,437.71 for depletion. No evidence has been produced to establish that this was error.

*Decision will be entered for the respondent.*