Thomas R. Reyburn v. Commissioner. Clyde A. Vandivort and Julia S. Vandivort v. Commissioner. Clyde A. Vandivort v. Commissioner.
Reyburn v. Commissioner
Docket Nos. 7385, 7386 and 7387
United States Tax Court
1946 Tax Ct. Memo LEXIS 124; 5 T.C.M. (CCH) 680; T.C.M. (RIA) 46187; July 31, 1946
*124 1. In 1936, petitioners Reyburn and Vandivort and two other individuals purchased several thousand acres of farm lands and buildings in Missouri. Title was taken in the name of Vandivort, who, on the same day, executed a trust instrument, creating the Cape Trust, and declaring that he held the properties in trust for all four individuals who were issued beneficial certificates. During the years 1936 to 1940, Vandivort managed the farm lands and sold some of them and distributed the proceeds to the holders of the beneficial certificates. In 1940, the trust was terminated and Vandivort assigned title to the remaining lands and buildings to the then holders of the beneficial certificates, individually, as tenants in common. Upon the evidence, held, the Cape Trust was an association taxable as a corporation and the holders of the beneficial certificates realized long-term capital gains upon the liquidation of the trust in 1940. 2. In 1941, petitioners sold some of the lands and buildings they had received from the liquidation of the trust in 1940. Held, the holding period of the assets received in the 1940 liquidation commenced to run from the date of the liquidation and that the gains *125 on such sales were short-term capital gains. 3. Upon the evidence, held, petitioner Vandivort was entitled to deduct a certain amount as a bad debt in the year 1940 rather than in the year 1941. 4. Upon the evidence, held, the respondent's determination relative to several other minor issues is approved. Thomas R. Reyburn, Esq., 407 North Eighth St., St. Louis, Mo., for the petitioners. Harlow B. King, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These proceedings, duly consolidated, involve deficiencies in income tax for the calendar years 1940 and 1941, in amounts as follows: Docket No.
1940
1941
7385
$1,055.78
$452.31
7386
566.20
7387
69.85
In Docket No. 7386, petitioners Clyde A. and Julia S. Vandivort are husband and wife. They filed a joint return for the year 1941. Hereafter, we will for convenience sometimes refer only to the husband as petitioner. The issues resulting from the several assignments of error are as follows: 1. Did the respondent err in holding that petitioners Reyburn and Vandivort realized long-term gains of $6,061.20 and $3,030.59, respectively, upon liquidation of *126 the Cape Trust on August 22, 1940? 2. Did the respondent err in holding that Reyburn and Vandivort realized short-term capital gains of $2,453.46 and $1,226.73, respectively, upon the sale of certain farm lands in 1941 by a partnership of which they were partners, which was formed upon the liquidation of the Cape Trust? 3. Did the respondent err in holding that Clyde A. and Julia S. Vandivort were not entitled to deduct in their joint return for the year 1941 as a "bad debt" an amount of $1,457.50 but that Vandivort was entitled to deduct the said amount as a bad debt in his return for the year 1940? 4. Did the respondent err in holding that Reyburn realized additional income of $3,105.24 from the partnership of the Cape Trust in the year 1941? 5. Did the respondent err in holding that Vandivort realized additional income of $14.35 and $360.79 from the partnership of the Cape Trust in the years 1940 and 1941, respectively? 6. Did the respondent err in holding that Reyburn was entitled to eliminate from taxable income in the year 1941 an item of $4,706.85 returned as a long-term capital gain? 7. Did the respondent err in holding that Vandivort realized additional income *127 of $399.60 from a farm in the year 1940? In Docket No. 7385, the respondent also made some minor adjustments to Reyburn's income as reported in his returns for the years 1940 and 1941, which adjustments have not been contested. Findings of Fact Petitioner, Thomas R. Reyburn, is an individual with his residence at St. Louis, Missouri. He filed his returns on the cash basis for the calendar years 1940 and 1941 with the collector for the first district of Missouri. Petitioners, Clyde A. and Julia S. Vandivort, are individuals with their residence at Cape Giradeau, Missouri. They, as husband and wife, filed a joint return for the calendar year 1941 and Clyde A. Vandivort filed a separate return for the calendar year 1940 with the collector for the first district of Missouri. These returns were filed on the cash basis. On March 13, 1936, Ralph A. Zimmer, acting as a straw purchaser for Reyburn and Festus J. Wade, Jr., both of St. Louis, Missouri, and Vandivort and C. L. Harrison, both of Cape Girardeau, Missouri, purchased from one Charles F. Winters, a straw man acting for the First National Bank in St. Louis, nine tracts of farming land aggregating approximately 4,219 acres, *128 all located in Scott County, Missouri, about 20 miles south of Cape Girardeau. The First National Bank had foreclosed on the properties under a mortgage held by it and was attempting to sell the properties. The purchase price was $40,000. One-half of the purchase price was paid in cash and the balance by a purchase money mortgage. Reyburn and Wade, Jr., each furnished $6,666.67 and Harrison and Vandivort each furnished $3,333.33 of the necessary cash payment of $20,000. Zimmer took title to the property on March 13, 1936 and on the same date he conveyed all the property subject to the mortgage and notes to Vandivort, who, on the same day, executed a trust instrument the material provisions of which are as follows: KNOW ALL MEN BY THESE PRESENTS: That I, Clyde A. Vandivort, of Cape Girardeau, Missouri, the grantee named in a certain warranty deed from Ralph A. Zimmer dated the 13th day of March, 1936, by which deed there are conveyed to me certain land and buildings situate in the County of Scott, State of Missouri, to wit: [Here follows a description of 16 separate tracts totaling 4,219.46 acres.] For a further description of these properties, reference is made herein to the *129 aforesaid deed from Ralph A. Zimmer, and I hereby declare that I will, and my heirs and successors shall, hold said granted properties, and all other funds and property at any time transferred to and received by me as the trustee herein for the purposes, with the powers and subject to the provisions hereof, for the benefit of the cestui que trust (who shall be beneficiaries only without partnership, associate or any other relationship whatsoever inter sese), and upon the trust following, namely: 1. In trust to convert the same into money, at the request or with the consent of all of the record holders of the beneficial certificates hereinafter referred to, and distribute the net proceeds therefrom among the persons at the time of such conversion holding and owning beneficial interests herein, as evidenced by the beneficial certificates issued by the trustee, as hereinafter provided; it being, however, expressly understood and agreed that such conversion may be deferred or postponed, except that the same shall not be postponed beyond the end of twenty-one (21) years from the date hereof. During such postponement, and until such conversion, the interest of the cestui que trust shall *130 be considered, for purposes of transmission and otherwise, as personal property, and shall not be negotiable, but only assignable, and subject to the terms of this agreement and the terms set out in the certificates. 2. In trust pending final conversion and distribution of the property, to manage and control the same, the trustee having for such purposes and for all purposes of sale, lease, mortgage, exchange, improvement, repair, and development, and any and all arrangements, contracts and dispositions of trust property, or any part thereof, all and as full discretionary powers and authority as the trustee would have if the trustee were the sole and absolute beneficial owner thereof in fee simple, subject to the one qualification that in exercising the powers of sale or mortgage or exchange, or leases for a term in excess of two (2) years, the trustee shall, prior thereto, secure the written consent of all of the record holders of the beneficial certificates hereinafter referred to. * * *
3. In trust to collect, receive, and receipt for all rents and income from the property, and semi-annually or oftener, at the convenience of the trustee, to distribute such portion thereof *131 as in the opinion of the trustee, concurred in by the record holders of all of the beneficial certificates, may be determined to be fairly distributable net income to and among the several cestui que trusts according to their respective fractional interests. 4. This trust is declared in favor of and for the benefit of C. L. Harrison and Clyde A. Vandivort, both of Cape Girardeau, Missouri, each for a one-sixth (1/6) interest, and Festus J. Wade, Jr. and Thomas R. Reyburn, both of St. Louis, Missouri, each for a one-third (1/3) interest, to whom the trustee shall issue proper beneficial certificates signed by the trustee for the interests above indicated, and which certificates and all others which may be hereafter issued in exchange or substitution therefor shall be deemed parts hereof. The certificates shall not be transferred on the records of the trustee except (1) with the written consent, filed with the trustee, of the record holders of the remaining beneficial certificates, or (2) to the executors or administrators of a deceased record holder, or (3) pursuant to an order of distribution of a court of competent jurisdiction in the event of the death or disability of a record *132 holder. Nothing in this instrument contained shall preclude a record holder from assigning, by separate written instrument, an interest in a certificate, but no trustee herein or other record holder shall be required to take any notice of such assignment, and the trustee and record holders may act in all matters as though such assignment had not been made. No such assignee shall be entitled to become a record holder except with the written consent, filed with the trustee, of all record holders. The name in which the certificate stands upon the books of the trustee shall be conclusive evidence between the trustee and any record holder or party claiming any interest in a beneficial certificate of the ownersip of the certificate, and it shall not be the duty of the trustee upon transferring such certificates or paying dividends or making disbursements of any other nature or for any other purposes, or at any time, to inquire in any way into the relations between assignor and assignee, or pledgor and pledgee, of beneficial certificates. A statement in writing signed and acknowledged by the trustee and purported record holders of a majority in interest of beneficial certificates, duly *133 recorded with the Recorder of Deeds for Scott County, Missouri, may always be relled upon as to who constitutes the record holders of beneficial certificates and their respective interests therein and in this trust as of the date designated in such statement, and shall be conclusive evidence in favor of all persons dealing in good faith with the trustee. The beneficial certificates shall with appropriate insertions, be in substantially the following form, to wit: This is to certify that is the owner of an undivided beneficial interest in and to all of the lands and other assets held by Clyde A. Vandivort, as trustee, under trust instrument dated the day of , 1935, recorded in Book , Page , of the Recorder of Deeds of Scott County, Missouri. This certificate is non-negotiable and may only be transferred or assigned in accordance with the terms of said trust instrument, to which reference is hereby made for the rights of the holder, and to which instrument this certificate is subject. The holder hereof, in accepting this certificate, agrees to all of the terms of said trust instrument and agrees to be bound thereby. Dated at Cape Girardeau, Missouri, this day of , 19 . Trustee. *134 5. The trustee shall at all times keep full and proper books of account and of the record holders of certificates. No trustee shall be obligated to give bond or have any liability except for his own gross negligence or bad faith. 6. The trustee shall not be entitled to any compensation hereunder, except such as may be agreed upon in writing by the trustee with the holders of all of the beneficial interests. 7. Any trustee hereunder may resign by written instrument duly acknowledged and recorded with the Recorder of Deeds for Scott County, Missouri. Any trustee hereinder may be removed at any time by written instrument signed and duly acknowledged by the holders of a majority in amount of the beneficial interests herein and recorded with the Recorder of Deeds for Scott County, Missouri. Any vacancy in the office of trustee, however occasioned, shall be filled by written instrument similarly signed, acknowledged, and recorded as in the case of removal of a trustee. The resignation, removal, or appointment of a trustee shall, respectively, be effective upon the recording of the proper instrument provided for in paragraph 7. 8. The provisions of this indenture may be modified at *135 any time by an instrument in writing and acknowledged by the then trustee, assented to in writing by the holders of all of the beneficial interests herein, and recorded with the Recorder of Deeds for Scott County, Missouri. 9. The title of this trust shall for conveience be in the Cape Trust, and the term "trustee" shall include the original trustee and all successor trustees. "Record Holder" shall mean the holder of a beneficial certificate as disclosed by the records of the trustee. 10. At the end of twenty-one (21) years from the date hereof (unless this trust shall prior thereto be lawfully terminated), all of the property of every kind then held hereunder shall be sold by the trustee and equitable distribution made of the net proceeds among the record holders. The consent of holders of beneficial certificates to such sale shall not be required. As a condition precedent to any distribution, the trustee may require the presentation of a beneficial certificate for suitable endorsement of distribution thereon. IN WITNESS WHEREOF, I have hereunto affixed my signature this 16th day of March, 1936. The above trust instrument was duly signed by Vandivort and also by his wife to *136 release all marital and statutory rights in and to the property which she might have. The instrument was also duly recorded. The trust thus created will sometimes hereinafter be referred to as the "Cape Trust". In accordance with the terms of the trust indenture beneficial certificates were issued by the trustee to those who had contributed to the trust fund. The original record holders of beneficial certificates and the interests acquired by each follows: Interest Acquired
Reyburn
1/3
Wade, Jr.
1/3
Harrison
1/6
Vandivort
1/6
On or about June 22, 1937, Wade, Jr. sold one-fourth of his interest in the Cape Trust to Vandivort, one-fourth to Harrison, and one-half to Reyburn. The sale was in the amount of $13,000 contributed by the purchasers in proportion to the interests acquired. As a result of this sale the record holders of beneficial certificates and the interests owned by each were as follows: Reyburn
1/2
Vandivort
1/4
Harrison
1/4
On August 22, 1940, the trust indenture of March 13, 1936 was terminated by Vandivort as trustee who assigned title to the remaining lands by warranty deed to the record holders of beneficial certificates *137 with a one-half interest to Reyburn, one-fourth interest to Vandivort, and one-fourth interest to Harrison, individually, as tenants in common. Early in 1936, advances in the form of loans were made to the trustee by the holders of beneficial certificates to provide him with funds to purchase seed and make repairs. Later, other advances were made, which were used by the trustee to purchase cattle. The farms were leased under written contracts to tenants selected by the trustee upon a share-crop basis. The operating results of the Cape Trust for the calendar years 1936 to 1940, inclusive, were as follows: 1936
1937
1938
1939
1940
Income: Farm Produce
8,356.57
10,535.00
5,619.44
8,520.48
12,402.76
Cotton Futures
529.07
A.A.A. Benefits
1,683.36
Total Income
8,356.57
12,747.43
5,619.44
8,520.48
12,402.76
Expense: Crop Production
1,397.28
2,150.30
1,713.29
905.54
4,005.77
Salary
4,200.00
4,200.00
4,200.00
1,800.00
1,800.00
Maintenance
1,212.61
3,603.21
247.17
2,283.28
1,157.90
Legal
499.86
17.40
463.75
Insurance
34.60
46.60
235.91
205.15
105.74
Miscellaneous
203.18
30.15
385.25
338.81
46.62
Interest
1,200.00
1,200.00
1,058.32
1,137.50
1,471.04
Taxes
2,777.86
2,488.50
1,849.14
3,031.21
2,179.74
Depreciation
725.00
725.00
750.00
997.23
947.46
Automobile Expense
367.36
486.92
Total Expense
12,250.39
14,461.16
10,439.08
11,529.83
12,201.19
Profit or (Loss)
(3,893.82)
(1,713.73)
(4,819.64)
(3,009.35)
201.57
*138 The fair market value of the total net assets of the Cape Trust as of the date of liquidation on August 22, 1940 was as follows: Assets: Cash
$ 336.08
Notes of tenants
5,200.00
Cattle
7,599.88
Farm buildings (Depreciation Value)
10,680.01
Farm lands (3,898.82 acres at $15
per A)
58,482.30
Automobiles
834.00
Total
$83,132.27
Liabilities: Mortgage
$33,000.00
Accounts Payable
887.50
Total
33,887.50
Net assets
$49,244.77
In 1936, the holders of beneficial certificates executed a written contract with the trustee by which he received an annual salary of $4,200 for the years 1936, 1937 and 1938 in consideration of his services in the management of the trust property. In 1939, another written contract was executed under which the trustee received an annual salary of $1,800 plus a percentage of the net profits, if any, derived from the operation of the trust property. The trustee was also provided with an automobile in order to facilitate his management operations. During the existence of the Cape Trust from March 1936 to August 22, 1940 Federal fiduciary tax returns were filed by the trustee. For the period August 23, 1940 to December 31, 1940 and *139 for each year thereafter Federal partnership returns have been filed. The returns of each petitioner for the taxable year ended December 31, 1940 were examined by respondent who increased the taxable income of Reyburn in the amount of $6,061.20 and Vandivort $3,030.59. This increase was the result of respondent's determination that upon the termination of the Cape Trust on August 22, 1940 each petitioner received a long-term capital gain based upon the value of the assets of the trust upon their transfer August 22, 1940. In a statement attached to the deficiency notice sent to Reyburn the respondent explained the increase in income of $6,061.20, as follows: (a) Taxable income is increased $6,061.20, representing long-term capital gain realized from liquidation of the Cape Trust (an association), computed as follows: Fair market value of assets received
in liquidation
$24,622.39
Cost of your beneficial interest ex-
changed for said assets
12,500.00
Recognized gain
$12,122.39
Returnable
$ 6,061.20
Reported
None
Adjustment
$ 6,061.20
The cost of Reyburn's beneficial interest was $13,166.67 ($6,666.67 paid at inception of Cape Trust and $6,500 paid *140 to Wade, Jr.) instead of $12,500. In a statement attached to the deficiency notice sent to Vandivort the respondent explained the increase in income of $3,030.59, as follows: (a) Taxable income is increased $3,030.59, representing long-term capital gain realized from liquidation of Cape Trust (an association), computed as follows: Fair market value of assets received
in liquidation
$12,311.19
Cost of your beneficial interest ex-
changed for said assets
6,250.00
Recognized gain
$ 6,061.19
Returnable
$ 3,030.59
Returned
None
Adjustment
$ 3,030.59
The cost of Vandivort's beneficial interest was $6,583.33 ($3,333.33 paid at inception of Cape Trust and $3,250 paid to Wade, Jr.) instead of $6,250. In 1941, the partnership sold 1,028 acres of the 3,898.82 acres it had acquired from the Cape Trust on August 22, 1940. The respondent determined a short-term capital gain on these sales as follows: Sale Price
Short-term
Acres
less
Capital
sold
Commissions
Cost
Gain
80
$ 1,344.55
$ 1,200
$ 144.55
180
3,519.55
2,700
819.55
320
6,960.00
4,800
2,160.00
78
1,651.41
1,170
481.41
370
6,851.41
5,550
1,301.41
1,028
$20,326.92
15,420
$4,906.92
*141 In 1941, the partnership sold the buildings on the above mentioned 1,028 acres of land that were sold. The respondent determined a gain of $147.74 on such sales as follows: Sale Price
Cost
Bldgs. on
less Com-
less De-
Tract sold
missions
preciation
Gain
80 Acre
$ 395.45
$ 375.00
$ 20.45
180 Acre
395.45
375.00
20.45
320 Acre
1,040.00
975.00
65.00
78 Acre
454.59
492.59
(38.00)
370 Acre
1,204.84
1,125.00
79.84
1,028
$3,490.33
$3,342.59
$147.74
For the taxable year ended December 31, 1941, the partnership return as filed shows an ordinary loss of $810.19 and a long-term capital gain of $9,413.71, which gain represents the profit realized by the partnership from the sale of a part of the farm land received by the beneficial certificate holders of the Cape Trust upon its termination in 1940. Said gain was computed by petitioners on the basis of a holding period dating from organization of the Cape Trust in 1936 and by using as the basis of the lands sold their cost in 1936. Upon examination of the returns of each partner, respondent determined that the 1941 sales resulted in a short-term capital gain of $4,906.92 as set forth in *142 the second preceding paragraph and computed said gain by using as a basis of the property sold its fair market value ( $15 per acre) when distributed to the holders of the trust's beneficial certificates on August 22, 1940. Accordingly, taxable income of the petitioners was increased by their distributive share of the short-term capital gain of $4,906.92 as follows: Reyburn, one-half interest
$2,453.46
Vandivort, one-fourth interest
1,226.73
In 1929, Vandivort together with Harrison loaned $2,915 to one S. B. Hunter receiving therefor a note dated July 5, 1929, due two years from date payable to C. A. Vandivort and Company, a partnership consisting of Vandivort and Harrison. Judgment on the note was entered against Hunter on March 18, 1940, and a levy was made but no assets were found. Vandivort claimed one-half of the note as a bad debt on his 1941 tax return and also claimed it again on his 1943 return. Respondent disallowed the deduction in 1941 but allowed it in the year 1940. Prior to the suit on the note the debtor had made no payments of principal or interest and had informed Harrison that he had no property or money or means of securing the same for the *143 purpose of making payment of the principal or interest thereon. Opinion BLACK, Judge: The issues have been previously stated. We will consider them in their regular order. Issue 1. The solution to the question here presented depends upon whether the Cape Trust was a pure trust, taxable as such, or whether it was in substance an association taxable as a corporation. See section 3797(a)(3) of the Internal Revenue Code[1] and sections 19.3797-1-2 and 3 of Regulations 103. In determining whether the Cape Trust is a pure trust or an association taxable as a corporation we must, as we did in Wabash Oil & Gas Association, 6 T.C. 542, examine the facts in connection with "the now well settled criteria laid down by the Supreme Court" in Morrissey et al. v. Commissioner, 296 U.S. 344; Swanson et al. v. Commissioner, 296 U.S. 362; Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, and Helvering v. Combs et al., 296 U.S. 365. "In the leading Morrissey case the Court said that, in order to be taxable as an association, the trust must have been created as a joint enterprise for the carrying on of *144 a business and sharing the profits; and that in form of organization it must resemble a corporation." J. W. Wells Lumber Co. Trust A, 44 B.T.A. 551, 556. We think that an examination of the trust instrument set out in our findings, together with the other facts found from the evidence introduced, shows that the Cape Trust was created as a joint enterprise for the carrying on of a business and sharing the profits. Originally four individuals furnished a total of $20,000 which was used to pay half of the purchase price of 4,219.46 acres of farm land. Title to the land, subject to a purchase money mortgage and notes for the other half of the purchase price, was taken in the name of one of the individuals, who on the same day executed the trust instrument in question. In this instrument Vandivort declared that he held the properties as trustee for the benefit of the beneficiaries who were to *145 receive beneficial certificates as representing their proper interest in the trust. Under paragraph 1 Vandivort was to convert the properties into money and distribute the net proceeds among the holders of the beneficial certificates. This did not have to be done at once but could be deferred or postponed for a period of 21 years, during which period under paragraph 2 Vandivort was to manage and control the properties with as full discretionary powers and authority as he would have if he were the sole and absolute beneficial owner thereof in fee simple, subject to the one qualification "that in exercising the powers of sale or mortgage or exchange, or leases for a term in excess of two (2) years, the trustee, shall, prior thereto, secure the written consent of all of the record holders of the beneficial certificates * * *." Under paragraph 3 Vandivort was to collect, receive, and receipt for all rents and income from the properties and semiannually or oftener make a distribution to the holders of the beneficial certificates. The evidence shows that during the time the Cape Trust was in existence Vandivort made numerous contracts and leases with share-croppers, bought and sold cattle, *146 speculated in cotton futures, borrowed money from the holders of beneficial certificates at various times for the purpose of purchasing cattle and feed and to make necessary repairs, and also elected to receive A.A.A. benefits under that program. Vandivort received compensation for his services in the management of the trust properties. All of this we think clearly shows that the trust was created as a joint enterprise for the carrying on of a business and sharing the profits. We will next consider whether in form of organization the Cape Trust resembled a corporation. In this connection the Supreme Court in the Morrissey case said: What, then, are the salient features of a trust - when created and maintained as a medium for the carrying on of a business enterprice and sharing its gains - which may be regarded as making it analogous to a corporate organization? The Supreme Court in answering the above question recognized five salient features of a corporation which have been summarized by the Fifth Circuit in Commissioner v. Rector & Davidson, 111 Fed. (2d) 332, as follows: * * * They are (1) title to the property held by the entity, (2) centralized management, *147 (3) continuity uninterrupted by deaths among the beneficial owners, (4) transfer of interest without affecting the continuity of the enterprise, and (5) limitation of the personal liability of participants. The Cape Trust possessed all of these features except perhaps the last, namely, limitation of the personal liability of participants. The absence of this one feature, however, does not necessarily preclude the trust from recembling a corporation for "it is resemblance and not identity" that controls. Morrissey v. Commissioner, supra.In Bert et al. v. Helvering, 92 Fed. (2d) 491, the court in considering this specific point said: * * * The only element not clearly present in this case is limitation of liability. * * * This distinction is stressed by petitioner. * * * While, therefore, it is true that the Supreme Court in all four cases in 296 U.S. mentions limitations of liability as one of the characteristics of the trusts declared in those cases to be associations under the law, and while in this case the right of the beneficiaries or the trustee to limitation of liability may perhaps be challenged, as to which we need express no opinion, *148 we think this is not the vital and conclusive factor under the terms of the tax act, or that the Supreme Court intended in its four opinions to make it an indispensable element in cases of this sort. Indeed, if each of the elements named by the Supreme Court in the Morrissey case be considered as essential, the whole would make as complete a corporate form as would be true under a charter of incorporation. The only missing link would be the charter itself. We think the real test is whether the enterprise more nearly resembles in general form and mode of procedure a corporation * * *. We think the facts as set out in our findings show that the Cape Trust more nearly resembled in general form and mode of procedure a corporation than it did a pure trust. We have not overlooked the provision in the trust instrument whereby Vandivort declared that he held the said granted properties "for the benefit of the cestui que trust (who shall be beneficiaries only without partnership, associate or any other relationship whatsoever inter sese) * * *." We think the other salient features referred to above and what was actually done as set out in our findings speak louder than this single provision *149 in the trust instrument. As the court said in Commissioner v. City Nat. Bank & Trust Co. et al., 142 Fed (2d) 771, "The character of this trust cannot be determined from a single sentence, paragraph or declaration, but must be gleaned from a consideration of the entire instrument." Petitioners in their brief in contending that the Cape Trust was a pure trust cite and rely upon the decisions of White v. Hornblower et al., 27 Fed. (2d) 777; Blair v. Wilson Syndicate Trust, 39 Fed. (2d) 43; Commissioner v. Atherton et al., Commissioner v. Morriss Realty Co. Trust No. 2 et al., 68 Fed. (2d) 648; Girard Trust Co., Trustee, 34 B.T.A. 1066; A. A. Lewis & Co. et al., v. Commissioner, 301 U.S. 385; Helvering v. Washburn, 99 Fed. (2d) 478; and Commissioner v. Rector & Davidson, supra. The first four cases cited were decided prior to the Morrissey case and of course were decided without the benefit of the four Supreme Court cases in 296 U.S. The facts in the remaining cases are materially different from the facts in the instant proceedings. In Girard Trust Co., the trust there was engaged *150 in the liquidation of an estate rather than in business for profit. In A. A. Lewis & Co., the Supreme Court distinguished that case from the Morrissey case by saying: The arrangement here answers the foregoing description of an ordinary trust - that is, it was created in virtue of a declaration by which a designated piece of real property was conveyed to the trustee on specified trusts, for the benefit of definitely named persons, one of whom was the grantor of the land and the other an agent of the grantor for the sole purpose of subdividing and selling the land. The agent was designated by name, and his powers definitely fixed in advance of their exercise. He possessed no authority beyond that expressly delegated by his principal. The trust was adopted merely as a convenient means of making effective the sales of the agent under the contract. The duties of the trustee were purely ministerial, with no power to control, direct, or participate in, the conduct of the selling enterprise contemplated by the contract. There is to be found in the operation of the business no essential characteristic of corporate control - nothing analogous to a board of directors or shareholders, no exemption *151 from personal liability, no issue of transferrable certificates of interest. There is simply the common relation of principal and agent, coupled with the collateral incidents of an ordinary trust. * * * The trust in Helvering v. Washburn was held to be a "liquidating trust" where it was formed for the purpose of liquidation as soon as circumstances would permit and the carrying on of business was only as an incident necessary for the preservation of the trust property. It did not have the salient features mentioned in the Morrissey case, which features were also lacking in the "syndicate" or "joint venture" involved in the Rector & Davidson case. We hold, therefore, that the Cape Trust was an association taxable as a corporation. It follows that the respondent was correct in principle in holding that petitioners Reyburn and Vandivort realized long-term gains upon liquidation of the Cape Trust on August 22, 1940. Sherman et al. v. Commissioner, 146 Fed. (2d) 219. The respondent concedes in his brief that this gain should be recomputed by using the cost of Reyburn's and Vandivort's beneficial interests of $13,166.67 and $6,583.33, respectively, which costs we have set *152 out in our findings. Issue 2. Both parties agree that our solution to the question here presented depends upon our holding under the first issue. Having held that the Cape Trust is an association taxable as a corporation, it follows that the holding period of the assets received on the liquidation commences to run from August 22, 1940 and that the gain made in 1941 from the sale of capital assets received in such liquidation would come within the definition of "short-term capital gain" as that term is defined in section 117(a)(2) of the Internal Revenue Code. The respondent's determination on this issue is sustained. Issue 3. Petitioner Vandivort no longer contends that he and his wife are entitled to deduct in their joint return for the year 1941 as a "bad debt" the amount of $1,457.50. Vandivort now contends that the said amount should be allowed as a bad debt deduction in his return for 1943. The respondent has allowed petitioner a deduction as a bad debt in his 1940 return of the amount of $1,457.50 on account of the Hunter note. The record does not show that the respondent has erred in this respect. We, therefore, approve the respondent's determination *153 as to this issue. Issue 4. As shown in the statement attached to the deficiency notice to Reyburn this adjustment to Reyburn's income for 1941 of $3,105.24 is the result of two adjustments made by the respondent in the partnership return for the calendar year 1941 as follows: Gain on sale of farm buildings
$ 147.74
Excessive salaries disallowed
6,062.75
Total
$6,210.49
Reyburn's one-half interest
$3,105.24
The manner in which the respondent arrived at the gain of $147.74 is set out in our findings. In view of our holding on Issue 1, it follows that the respondent's adjustment as to this item of $147.74 was proper. No evidence was offered in connection with the salary adjustment. We, therefore, approve the respondent's determination as to this issue. Issue 5. As to the $14.35 item, the statement attached to the deficiency notice explains the adjustment as follows: (c) This adjustment represents your distributive share of income of the Cape Trust, a partnership, of Cape Girardeau, Missouri, for the period from August 23 to December 31, 1940. No evidence was offered in connection with this item. As to the $360.79 item, the statement attached to the *154 deficiency notice shows that this adjustment is the result of the same two adjustments made by the respondent in the partnership return for the calendar year 1941 referred to under Issue 4 above. It follows that we must also approve the respondent's determination as to this issue. Issue 6. In the statement attached to the deficiency notice the respondent explains the adjustment here at issue as follows: (d) This adjustment is to eliminate from taxable income the item of $4,706.85 returned as a long-term capital gain representing your distributive share of long-term capital gain realized by the Cape Trust, a partnership, from the sale of lands under item (b). It is held that the resulting gain is taxable as a short-term capital gain. Therefore, the amount returned as a long-term capital gain is eliminated. This adjustment automatically followed from the respondent's determinations referred to-under Issue 1 and 2. Since we have approved those determinations in principle, there is no reason to disturb the adjustment here involved. Issue 7. No evidence was offered as to this issue. We, therefore, affirm the respondent's determination that Vandivort realized additional income *155 of $399.60 from a farm in the year 1940. Decisions will be entered under Rule 50. Footnotes
1. SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * *
(3) Corporation. - The term "corporation" includes associations, joint-stock companies, and insurance companies.↩