VENETIAN SHORTWAY, INC., A FLORIDA CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3432.   Promulgated October 23, 1944.

*W. H. Mactye, C. P. A.,* for the petitioner.
*Bernard D. Hathcock, Esq.,* for the respondent.

---

OPINION.

OPPER, *Judge*: The controversy involves the effect of capital stock tax returns filed by petitioner subsequent by two years or more to the date [1] when they were due according to the statutory plan.[2] Petitioner's declared value excess profits tax, the amount of which is now in issue, depends for its computation upon the valuation to be placed upon the capital stock.[3] This in turn is designed to be the figure

---

[1] Revenue Act of 1938—
"SEC. 601. CAPITAL STOCK TAX.

\* \* \* \* \* \* \*

"(d) Every corporation liable for tax under this section shall make a return under oath within one month after the close of the year with respect to which such tax is imposed to the collector for the district in which is located its principal place of business \* \* \*."

[2] By T. D. 4911, 1939–2 C. B. 351, a general extension of time from July 31, 1939, to August 31, 1939, was granted to corporations having a principal place of business within the continental United States.

[3] Revenue Act of 1938—
"SEC. 602. EXCESS-PROFITS TAX.

"(a) If any corporation is taxable under section 601 with respect to any year ending June 30, there is hereby imposed upon its net income for the income-tax taxable year ending after the close of such year, an excess-profits tax equal to the sum of the following:

"6 per centum of such portion of its net income for such income-tax taxable year as is in excess of 10 per centum and not in excess of 15 per centum of the adjusted declared value;

"12 per centum of such portion of its net income for such income-tax taxable year as is in excess of 15 per centum of the adjusted declared value."

selected by the taxpayer itself for the first capital stock tax year which, as to corporations like petitioner which were in existence at the time, is found to be the year ended June 30, 1938.[4]  Originally the value established for that year was binding for the two succeeding years, subject to specified adjustments not here material.[5]  Subsequently, however, leave was given to elect new declarations of value for the capital stock tax years 1939 and 1940, subject to compliance with certain preliminary and specific conditions.[6]  Petitioner claims to be entitled in the computation of its declared value excess profits tax to the benefit of such new declarations for those two years.  The question is whether it has complied with the conditions necessary to avail itself of that privilege.

In *Haggar Co.* v. *Helvering*, 308 U. S. 389, the taxpayer corporation had filed a capital stock tax return embodying an elected declared value for its capital stock as authorized by the capital stock tax provisions of the revenue act.  The value declared in the "first" return could not thereafter be amended.  Subsequently the taxpayer attempted to file an amended return containing a different declared value, a position which the respondent refused to accept.  Pointing out that the second return was filed within the time permitted for the filing of the original return, and hence that it accomplished nothing more than the taxpayer could have legally effected by withholding its original return, the Supreme Court held that the statute was susceptible of the construction that by "first return" was meant the return for the first year and that the timely amended declaration thus escaped the

---

[4] Revenue Act of 1938, section 601—

"(a) For each year ending June 30, beginning with the year ending June 30, 1938, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock.

\*　　\*　　\*　　\*　　\*　　\*

"(f)\*　\*　\*

"(2) For each declaration year the adjusted declared value shall be the value, as declared by the corporation in its return for such declaration year (which declaration of value cannot be amended), as of the close of its last income-tax taxable year ending with or prior to the close of such declaration year (or as of the date of organization in the case of a corporation having no income-tax taxable year ending with or prior to the close of such declaration year)."

[5] Revenue Act of 1938, section 601—

"(f) (1) The adjusted declared value shall be determined with respect to three-year periods beginning with the year ending June 30, 1938, and each third year thereafter. The first year of such three-year period \* \* \* shall constitute a 'declaration year.'

\*　　\*　　\*　　\*　　\*　　\*　　\*

"(3) For each year of any three-year period subsequent to the declaration year. the adjusted declared value in the case of a domestic corporation shall be the value declared in the return for the declaration year plus \* \* \*."

[6] Internal Revenue Code, sec. 1202 (Revenue Act of 1939, sec. 301)—

"(e) ADDITIONAL DECLARATION YEARS.—In the case of any domestic corporation, the year ending June 30, 1939, and the year ending June 30, 1940, shall each, if not otherwise a declaration year, constitute an additional declaration year if with respect to such year (1) the taxpayer so elects (which election cannot be changed) in its return filed before the expiration of the statutory filing period or any authorized extension thereof \* \* \*."

prohibition of the statute. That the decision was limited to a timely filing appears conclusively from the subsequent decision in *Riley Investment Co.* v. *Commissioner*, 311 U. S. 55.

The question here is very different. Not only does the present statute incorporate expressly the result of the *Haggar* case to permit declarations to be effective which are filed within the statutory filing period or any authorized extension thereof,[7] but here what petitioner seeks to do is not to amend a declaration within the statutory period, but by means of a concededly delinquent filing to exercise an election the expression of which the statute unmistakably confines to a timely return.

We are unable to concur in the suggestion that there is any room for construction of the statutory mandate. "Petitioner is seeking * * * to adopt a new method of computation * * *. That opportunity was afforded as a matter of legislative grace; the election had to be made in the manner and in the time prescribed by Congress. The offer was liberal. But the method of its acceptance was restricted. * * * To extend the time beyond the limits prescribed in the Act is a legislative not a judicial function." *Riley Investment Co.* v. *Commissioner, supra.* While the manner of exercising the election now in controversy may have accorded with the statutory offer, the time of its exercise clearly did not. No action taken after expiration of the time provided by law for filing returns could possibly fall within the requirement that election must be made "before the expiration of the statutory filing period or any authorized extension thereof."

We can not agree that to construe the statute in that manner would accord with the congressional purpose. "* * * a taxpayer, situated as petitioner, is not then free to defer election until * * * some future date when conditions may be such that its election can be made more advisedly than that of its competitors." *Mother Lode Coalition Mines Co.* v. *United States*, 317 U. S. 222. Nor could the same result have been reached by the contemporaneous filing of a capital stock tax return for 1938 electing the higher value, as petitioner contends. For then, at least, the capital stock tax for that year would have been proportionally increased, a result which petitioner avoided by electing in its delinquent return for that year the lower declaration.

Such cases as *Del Mar Addition* v. *Commissioner* (C. C. A., 5th Cir.), 113 Fed. (2d) 410; *Jordan Creek Placers*, 43 B. T. A. 131; and *Huron River Syndicate*, 44 B. T. A. 859, dealt with a different question. No such effort was being made there as to procure a different declaration of value for years subsequent to the declaration year; and there was as a consequence no statutory requirement of timely election. The *Del Mar Addition* opinion relies upon "the silence of the taxing statute

---

[7] See footnote 6, *supra*.

on the question of a delinquent return" and the absence of any "limitation whatsoever upon its sufficiency because of the delay." Those cases permit, in the filing of the first declaration, a benefit which petitioner also enjoyed here. They furnish no support for any attempt to permit an election made by a delinquent return to have the same effect as though embodied in the punctual return upon which the grant of the legislative privilege is expressly conditioned.

No other ground for resisting the penalty is asserted. As to both deficiency and penalty the action of respondent appears to be justified.

*Decision will be entered for the respondent.*