## Wabash Oil and Gas Association, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 7805.    Promulgated March 21, 1946.

*Edmund A. Whitman, Esq.*, for the petitioner.
*A. J. McDowell, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: The main issue in this case is whether petitioner, in 1941, was an association taxable as a corporation. Applying to the

facts before us the now well settled criteria laid down by the Supreme Court in *Morrissey* v. *Commissioner*, 296 U. S. 344, and companion cases,[1] we find that some 55 persons associated themselves together to engage in the business of developing certain oil-producing property and marketing the oil, gas, and other products derived therefrom. In the first instance they secured centralized control and management by appointing Patton, Carey, and Hall as "agents and managers of the business" and giving them full power to conduct the business, including the right to borrow money, to pledge or mortgage the business assets, to sell the products, to drill wells, to purchase supplies, to employ and fix the compensation of all persons needed in the prosecution of the business, to employ counsel and sue or defend suits, and to compromise all matters of dispute relating to the business. The associates retained the power, by a majority in interest, to remove any agent or manager and appoint his successor, and to appoint the successor of any deceased agent. These agents and managers thus had powers and duties similar to those of a board of directors and officers of a corporation.

Title to the property of the business was held in the name of Patton, and provision was made whereby he agreed for himself and his personal representatives that in the event he should die, resign, or become unable to act, title should be assigned to the nominee of the other two "agents." No one of the associates was entitled to a dissolution or termination, but on his death or bankruptcy his personal representatives or trustee in bankruptcy were to succeed to his interest. The only limitation upon the right of any party to transfer his interest was that he should first submit it to the agents at a price to be agreed upon, in which case the agents were to have a 90-day option to purchase it. Otherwise, the interest could be transferred to anyone the holder thereof might choose. One associate did dispose of his interest during the taxable year to the agents. By these provisions continuity of the enterprise was preserved without interruption by the death either of the agents and managers or of any subscriber, or by the transfer of any subscriber's interest.

Finally, provision was made in the agreement for the limitation of personal liability of the subscribers to the amount of their several subscriptions. It is true that in the period involved the limited liability clause was not inserted in contracts made by the managers, since most of the supplies and materials were purchased on a cash basis. However, the members, by providing in the agreement for the limitation of personal liability, sought to obtain one of the characteristic advantages of corporate organizations.

---

[1] *Swanson* v. *Commissioner*, 296 U. S. 362; *Helvering* v. *Combs*, 296 U. S. 365; *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369.

Considering all these factors collectively, we conclude that petitioner more closely resembled a corporation than a partnership or joint venture and that it was an association properly taxable as a corporation. Respondent is therefore sustained on this issue.

The remaining question is whether the capital stock tax return filed by petitioner on November 13, 1945, is to be given effect as a declaration of value for the capital stock. We think this question is settled in petitioner's favor by the decisions in *Del Mar Addition* v. *Commissioner*, 113 Fed. (2d) 410; *Huron River Syndicate*, 44 B. T. A. 859; and *Jordan Creek Placers*, 43 B. T. A. 131. Respondent concedes that these cases support the proposition that a taxpayer which is in the process of litigation to determine whether or not it is a corporation may file a delinquent capital stock tax return. He attempts to distinguish them, however, by stating that there the returns were filed before the hearings, but that here the return was filed "after the hearing." We think it improper to say that the return was not filed until "after the hearing," for, upon the advice of the parties that a return would be filed and a subsequent stipulation entered into, no action was taken upon the motion that the case stand for further hearing. The return was filed, the stipulation entered into, and the fact made a part of the record. The distinction suggested is therefore without a difference. On this issue the petitioner is sustained.

It appears that the value declared in the capital stock tax return may be sufficient to eliminate petitioner's declared value excess profits tax liability. Since we have held that the value declared in the return is to be given effect, a recomputation will be required. Accordingly,

*Decision will be entered under Rule 50.*