J. T. WURTSBAUGH, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15321. Promulgated December 22, 1949.

*Walter E. Barton, Esq.*, for the petitioner.
*D. Louis Bergeron, Esq.*, for the respondent.

1062

1064

OPINION.

Hill, *Judge*: In deciding the liability of petitioner as a transferee for tax deficiencies determined by respondent against Lodwick for the calendar year 1941, the first question for our consideration is whether Lodwick realized income in 1941 from the sale of timber and lease of land to Kraft. Respondent contends that the sale was in actuality made by Lodwick and it thereby received taxable income of $92,692.27 in 1941. He argues that in transferring the timber and leasehold to Kraft on January 21, 1941, the former shareholders were

merely agents of Lodwick, serving as conduits of title. Respondent relies primarily on the doctrine of *Commissioner* v. *Court Holding Co.*, 324 U. S. 331, to support his view of the transaction. Petitioner, on the other hand, contends that the former stockholders of Lodwick realized the income arising from the sale to Kraft. He contends that the sale was in reality made by the shareholders and that, in so far as Lodwick was engaged in the transaction at all, it was merely acting as their agent.

Petitioner emphasizes principally three circumstances to support his view. First, Lodwick contemplated the possibility it might liquidate prior to consummation of the transaction at the time it entered into an executory contract of sale with Kraft. Next, Lodwick transferred the Bossier Parish tract to its shareholders in liquidation prior to completion of the sale. Finally, the former shareholders signed the instrument which conveyed the timber and granted the leasehold to Kraft, and Kraft made payment of the purchase price to them.

Despite these facts, we are convinced that the sale must be attributed to Lodwick under the principles stated in *Commissioner* v. *Court Holding Co.*, *supra.* That case stated that the tax consequences arising from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title, and that a sale by one person can not be converted for tax purposes into a sale by another by using the latter as a conduit through which to pass title.

Examining each step as an integral part in the whole transaction, the evidence points irresistably to the conclusion that the function performed by the shareholders in conveying the property to Kraft was to discharge Lodwick's contract obligation. We note, first, that all negotiations with Kraft from October 1940 until final consummation of the sale on January 21, 1941, were carried on exclusively by Lodwick through its attorneys. At no stage did either party cease negotiations. Nor is there evidence that either prior to or following Lodwick's liquidation on December 27, 1940, its shareholders ever tried to reach an independent agreement with Kraft for the sale of interests in the Bossier Parish tract.

It is significant that Lodwick entered into a binding executory contract for the sale of timber and lease of land to Kraft on October 31, 1940, while it still held title to the Bossier Parish land and before any action was taken by the stockholders authorizing liquidation. The terms of the sale were set forth clearly and definitely in the contract of October 31, 1940, and final consummation of the sale was conditioned only upon the approval of title by the vendee. It is true the contracting parties anticipated the possibility that Lodwick might be liquidated before title was approved and conveyance could be made, but the contract expressly provided that in the event of this contingency

any transferees of the Bossier Parish land, including the shareholders of Lodwick, would take it subject to this contract of sale. The effect of this provision was to bind the stockholders to carry out the conveyance to Kraft as the company's agents, should liquidation occur prior to completion of the sale. This clause completely negates the contention of petitioner that due to impending liquidation Lodwick entered into this contract on behalf of its shareholders.

When Wurtsbaugh, as liquidator of Lodwick, conveyed the Bossier Parish tract to the shareholders on December 13, 1940, Lodwick's executory contract of sale with Kraft was specifically made a part of the conveyance and the former stockholders expressly bound themselves to perform the obligations of Lodwick set forth therein. Furthermore, the terms of the instrument conveying the timber and leasing the land on the Bossier Parish tract to Kraft which the former shareholders executed on January 21, 1941, were similar in every major respect to those set forth in the contract of October 31, 1940.

In view of all these circumstances, we conclude that, in completing the sale to Kraft, the former shareholders were merely agents of Lodwick, carrying into effect an agreement entered into by Lodwick prior to liquidation, rather than principals, executing the terms of a contract made on their behalf by the company. Thus we hold that the sale to Kraft was made by Lodwick and that income arising therefrom accrued to it in the calendar year 1941.

Petitioner contends that, if it is determined that Lodwick realized income in 1941 from the sale to Kraft, then Lodwick was entitled to deduct therefrom various expenses arising in connection with the Bossier Parish tract in completing the sale to Kraft and in preparing Lodwick's income tax return for 1940, all of which were incurred in 1941 and paid by the partnership of former stockholders of Lodwick. Respondent, on brief, has not questioned expenses of $30 for title and abstract work, $165 for revenue stamps, and $17.50 for cancellation fees, all of which were incurred incident to the sale on January 21, 1941. Since it does not appear that such expenses entered into respondent's computation of income arising from the sale, we hold they should be excluded as costs of sale from the $92,692.27 which respondent determined Lodwick realized as gross income on the transaction. We thus hold, and have found as a fact, that income of $92,479.77 accrued to Lodwick in 1941 from the sale to Kraft. The deductibility of $4,350 interest paid on purchase money notes of the Bossier Parish tract, $372.25 paid attorneys for handling the sale to Kraft, and $250 paid for tax and accounting service fees in the preparation of Lodwick's income tax return for 1940 is not contested. Therefore we hold Lodwick was entitled to deduct these expenses in determining its net income for the year 1941. Respondent objects to a claimed deduction

of $2,518.09 for 1940 realty taxes on the Bossier Parish land paid on December 31, 1940. Since Lodwick was on an accrual basis of reporting income, we hold this 1940 liability may not be deducted in the subsequent year.

Petitioner next denies that Lodwick was liable for any declared value excess profits tax for the year 1941. He bases his contention, first, on the premise that Lodwick was not "carrying on or doing business" for any part of the year ended June 30, 1941, within the meaning of section 1200 (a) of the Internal Revenue Code,[1] imposing the capital stock tax. By the terms of section 600 of the code,[2] liability of a corporation for the declared value excess profits tax in 1941 depended upon it being taxable under section 1200 for the year ended June 30, 1941.

It has often been held that where a corporation was organized for profit and is doing what it was organized to do in order to realize a profit, no special volume of business is necessary to make it liable for the capital stock tax and a very slight activity may be deemed sufficient to constitute "doing business." *Section Seven Corporation* v. *Anglin*, 136 Fed. (2d) 155, 158.

Applying this principle to the facts of the instant case, we are convinced that Lodwick was "doing business" in the year ended June 30, 1941. Lodwick was organized for profit. For at least part of the year ended June 30, 1941, it also was carrying on one of the business activities for which it was organized in order to realize a profit. We have found as a fact that from October 1940 until January 21, 1941, Lodwick through its attorneys was negotiating continuously for the sale of timber and lease of land to Kraft and that it finally completed the transaction on the latter date through its stockholders. By this transaction Lodwick carried out its corporate purpose to sell timber and timber land. Such activity negates petitioner's argument that Lodwick was merely holding its properties pending liquidation at this time. We therefore hold that Lodwick was subject to capital stock tax under section 1200 for the year ended June 30, 1941.

Petitioner next contends that Lodwick was not liable for any declared value excess profits tax in 1941 because it claims to have filed

---

[1] SEC. 1200. TAX.

(a) DOMESTIC CORPORATIONS.—For each year ending June 30, beginning with the year ending June 30, 1939, there shall be imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.25 for each $1,000 of the adjusted declared value of its capital stock.

[2] SEC. 600. RATE OF TAX.

If any corporation is taxable under section 1200 with respect to any year ending June 30, there shall be imposed upon its net income for the income-tax taxable year ending after the close of such year, a declared value excess-profits tax equal to the sum of the following:

6–6/10 per centum of such portion of its net income for such income-tax taxable year as is in excess of 10 per centum and not in excess of 15 per centum of the adjusted declared value;

13–2/10 per centum of such portion of its net income for such income-tax taxable year as is in excess of 15 per centum of the adjusted declared value.

a capital stock tax return for the year ended June 30, 1941, of sufficient declared value to eliminate the tax. He refers to a 1941 capital stock tax return tendered for filing by the former stockholders of Lodwick on behalf of the company on July 18, 1947, in which a new declared value for the capital stock was stated in the amount of $950,000. In support of the validity of this return, petitioner argues that the 1941 capital stock tax return in the name of Lodwick filed by J. T. Wurtsbaugh, as president, and L. M. Moffitt, as secretary-treasurer, on September 29, 1941, was null and void, due to the incapacity of either of these men to represent Lodwick following the issuance of its certificate of final dissolution on May 27, 1941. He contends that respondent had no right to reject the second purported return for 1941 and rely on the first purported return for that year in computing Lodwick's declared value excess profits tax liability for 1941.

We agree that the purported capital stock tax return filed September 29, 1941, was a nullity for the reason that it was not filed within one month after June 30, 1941, and it does not appear that any extension of time for such filing was requested or granted.

In determining the tax liability herein, respondent used as the declared value of Lodwick's capital stock the amount of $245,665.37 which Lodwick had declared in its capital stock tax return for the year ended June 30, 1940. No reliance was placed upon the first purported capital stock tax return for 1941, which stated the value of the capital stock to be zero.

Furthermore, we are convinced that the purported capital stock tax return tendered in the name of Lodwick on July 18, 1947, was of no validity and respondent properly disregarded it in computing Lodwick's declared value excess profits tax liability for 1941. Section 1203 of the code, as amended,[3] governed the filing of capital stock tax returns for the year ended June 30, 1941. It provides that returns must be filed within one month after the close of the year with respect to which the tax is imposed, but permits the Commissioner to extend the time for making returns. Such extension, however, was expressly limited to 90 days with respect to the year ended June 30, 1941. Moreover, it does not appear that any extension in the time for filing

---

[3] SEC. 1203. RETURNS.

(a) REQUIREMENT.—Every corporation liable for tax under section 1200 shall make a return under oath. Such return shall contain such information and be made in such manner as the Commissioner with the approval of the Secretary may by regulations prescribe.

(b) TIME FOR FILING.—

(1) GENERAL RULE.—Such return shall be made within one month after the close of the year with respect to which such tax is imposed.

(2) EXTENSION OF TIME.—The Commissioner may extend the time for making the returns, under such rules and regulations as he may prescribe with the approval of the Secretary, but no such extension shall be for more than sixty days. With respect to the year ended June 30, 1941, the extension may be for not more than 90 days.

was requested or granted. In view of the mandatory language of section 1203, the purported 1941 capital stock tax return tendered for filing on July 18, 1947, was not timely presented and unquestionably would have had no validity even if it had been accepted for filing and filed.

Petitioner points to *Del Mar Addition* v. *Commissioner*, 113 Fed. (2d) 410; *Wabash Oil & Gas Association*, 6 T. C. 542; *Jordan Creek Placers*, 43 B. T. A. 131; and *Huron River Syndicate*, 44 B. T. A. 859, as authority for the right of the former stockholders to file a capital stock tax return on behalf of Lodwick as late as July 18, 1947. As to the taxpayers in those cases, it was held the delinquency in filing was not fatal, but involved only the delinquency penalty. But those decisions are of no aid to petitioner, for in them the taxpayer was an organization whose character as a statutory corporation was being litigated and whose duty therefore to file a capital stock tax return was not clear. They furnish no support for permitting a new capital stock valuation made in a delinquent return to have the same effect as though embodied in a punctual return. See *Westland Theatres, Inc.*, 46 B. T. A. 82, and *Venetian Shortway, Inc.*, 4 T. C. 244. The case of *Ardbern* v. *Commissioner*, 120 Fed. (2d) 424, cited by petitioner, does not involve capital stock tax returns and is clearly inapplicable.

Therefore, we hold that Lodwick did not escape liability for a declared value excess profits tax in 1941 by virtue of the capital stock tax return tendered for filing by the former stockholders.

Petitioner contends that, even if it should be held that Lodwick was liable for deficiencies in income tax and declared value excess profits tax for 1941, it was not liable under section 291 (a) of the code for penalties determined by respondent for failure to file an income tax and declared value excess profits tax return for 1941, because such failure was due to reasonable cause and not to willful neglect. On this issue we support petitioner. For the reasons which we think are apparent from the record as hereinabove indicated, we are convinced that the failure to file such returns was due to reasonable cause and not to willful neglect.

Petitioner finally contends that, even though we determine that Lodwick was liable for income and declared value excess profits taxes in 1941, yet he is not liable for their payment as a transferee of assets of Lodwick. He first invokes the doctrine of *res judicata* to support this contention. He argues that our earlier decision in *J. T. Wurtsbaugh*, 8 T. C. 183, decided once and for all that he was not liable as a transferee for any possible tax deficiencies of Lodwick regardless of the year, thereby estopping respondent forever from determining any liability against him on this basis. He bases this conclusion on the premise that respondent had only one cause of action against him

as transferee for any tax deficiencies of Lodwick and it was incumbent upon respondent to assert his entire claim in the earlier proceeding. To permit respondent first to contend that he was liable as a transferee for tax deficiencies of Lodwick in 1940, and when defeated on that question, then to determine he was liable for tax deficiencies of Lodwick in 1941, would be to allow respondent to split his cause of action against him as a transferee, in the view of petitioner.

We must reject this contention of petitioner, for it is based upon a misconception of transferee liability. As a result of receiving assets of Lodwick on dissolution, petitioner stood in the shoes of the dissolved corporation and was liable as transferee for payment of Lodwick's incurred tax liability for 1941 to the extent of the value of such assets. Income and declared value excess profits taxes are levied on an annual basis and each year marks the origin of a new and separate liability. In *J. T. Wurtsbaugh, supra,* we merely determined that respondent had no enforceable claim against Lodwick for taxes in 1940 and, therefore, petitioner was not liable as a transferee in respect to taxes against Lodwick for that year. Our decision in no way determined the liability of Lodwick for taxes in 1941 and in turn the liability of petitioner, as transferee, to pay them. Thus respondent was not estopped by *res judicata* from later asserting liability against petitioner on this basis. See *Commissioner* v. *Sunnen,* 333 U. S. 591.

Petitioner's second ground for arguing he should not be held liable as transferee for tax deficiencies of Lodwick for 1941 is based on the doctrine of estoppel by election. He states that, when respondent taxed both him and his wife on capital gains they realized in 1940 from assets received from Lodwick in that year without any reduction in their value on account of tax deficiencies of Lodwick for 1941, a binding election was made by respondent whereby petitioner was released from liability as transferee, and that respondent could not thereafter hold petitioner liable as a transferee on the ground that those assets were charged with a trust to satisfy the corporation's tax deficiencies for 1941. He cites in support of his argument *United States* v. *Brown,* 86 Fed. (2d) 798, and *Vestal* v. *Commissioner,* 152 Fed. (2d) 132. The cases cited are readily distinguishable on their facts.

We fail to see any such inconsistency in respondent's position as above claimed which would prevent him from asserting transferee liability against petitioner for tax deficiencies of Lodwick for 1941. In 1940, when petitioner received assets of Lodwick in liquidation, Lodwick had not incurred the tax liability for 1941 in respect of which petitioner is here charged with liability as transferee. Hence, there was no basis for the claimed election and respondent is not fore-

stalled from asserting that the assets in the hands of petitioner were impressed with a trust to pay tax liabilities of Lodwick incurred in 1941.

It is true it would be inequitable for respondent both to retain the full amount of the capital gains tax determined against petitioner and his wife for 1940 and also hold petitioner liable as a transferee for tax deficiencies of Lodwick in 1941 to the extent of the assets received on dissolution. Petitioner and his wife are entitled to a refund of the capital gains tax they paid in 1940 to the extent the 1941 tax deficiencies of Lodwick reduce the value of the distribution on liquidation. But petitioner and his wife are not without a remedy. They may still get relief through administrative action on their refund claim by the Commissioner, or, if he should disallow it, then by court action. Under section 3772 (a) (2) of the code,[4] a claim for refund is rejected only when the Commissioner has mailed by registered mail a notice of its disallowance. There is nothing in the evidence to show the Commissioner has taken such action. By virtue of the same section, petitioner and his wife have two years from the date of mailing of the Commissioner's disallowance to bring suit for refund, should the Commissioner disallow their claim.

We hold that petitioner was liable as a transferee, to the extent of assets he received on liquidation, for income and declared value excess profits tax liabilities of Lodwick for 1941, computed in accordance with our holdings and direction in this proceeding.

*Decision will be entered under Rule 50.*

---

[4] SEC. 3772. SUITS FOR REFUND.

 (a) LIMITATIONS.—

 \* \* \* \* \* \* \*

 (2) TIME.—No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of two years from the date of mailing by registered mail by the Commissioner to the taxpayer of a notice of the disallowance of the part of the claim to which such suit or proceeding relates.