Albert S. Swartz, Alleged Transferee of Swartz Grill, Inc. v. Commissioner.
Albert S. Swartz, Alleged Transferee v. Commissioner
Docket No. 23481.
United States Tax Court
1953 Tax Ct. Memo LEXIS 287; 12 T.C.M. (CCH) 430; T.C.M. (RIA) 53134; April 21, 1953
*287 1. Held, the sales records of Swartz Grill, Inc., were not accurately kept and the corporate books did not correctly reflect its income. 2. Held, the petitioner is liable as a transferee in equity under Section 311, I.R.C., of the assets of Swartz Grill, Inc., for the deficiencies determined against that corporation. 3. Held, the respondent is not estopped to assert transferee liability against the petitioner. A. B. Arbaugh, Esq., 1200 Harter Bank Building, Canton, Ohio, for the petitioner. James F. Kennedy, Jr., Esq., for the respondent. VAN FOSSAN Memorandum Findings *288 of Fact and Opinion Respondent determined deficiencies against the petitioner as transferee of Swartz Grill, Inc., as follows: Year Ended
Tax
Deficiency
June 30, 1942
Income
$ 2,141.08
Excess Profits
2,536.22
Declared Value Excess
Profits
1,616.57
June 30, 1943
Income
1,143.40
Excess Profits
18,165.99
Declared Value Excess
Profits
3,262.79
June 30, 1944
Income
1,691.38
Excess Profits
16,797.98
Declared Value Excess
Profits
3,107.15
The questions presented are whether the petitioner is a transferee of the assets of Swartz Grill, Inc. and liable as such for the deficiencies determined against that corporation and whether the respondent is estopped from such a determination. A further question is whether the books and records of the Swartz Grill, Inc., failed to reflect its income during the years in question. The petitioner did not appear at the hearing, although the hearing in this case had been continued five times previously between 1949 and 1952 at petitioner's request. Findings of Fact The stipulated facts are found accordingly. Swartz Grill, Inc., hereinafter sometimes referred to as the corporation, was *289 organized under the laws of Ohio in June 1936, and operated a bar and grill in an industrial section of Canton, Ohio, until its dissolution in February 1945. The outstanding stock of the corporation consisted of 76 shares, five of which were owned by Albert S. Swartz, herein called the petitioner. The business operations of the corporation were controlled by the petitioner. The corporate business records were kept by the Eastern Ohio Restaurant Association, hereinafter referred to as the Association. Cash books containing sales and purchase information, as well as a record of operating expenses, were maintained. The petitioner supplied the Association with the ends of unidentified tapes purporting to represent daily or weekly sales. The weekly sales records were altered in many instances by unexplained adjustments and interlineations during the years in question. The recorded sales receipts could not be reconciled with deposits to any corporate bank account. The petitioner rejected the Association's suggestion to allow that organization to maintain records showing asset and liability classification. The purchase records of the corporation were kept accurately. The corporation, *290 under the petitioner's supervision, cashed checks for its customers. The petitioner maintained and controlled a checking account in the name of the corporation in the People's Bank, Canton, Ohio, a checking account in the Harter Bank & Trust Company, Canton, in his own name, a checking account at the Dime Savings Bank, Canton, in the name of Arco Tea Room, and a savings account in the First National Bank, Canton, in his own name. Beginning in October 1940, the bank account maintained in the Harter Bank & Trust Company was used to clear checks cashed by the petitioner at the bar and grill. The average balance in the Harter Bank & Trust Company account increased from approximately $7,000 on July 1, 1941, to more than $42,000 on June 30, 1944. The bar and grill owned by the corporation competed with a factory cafeteria and sold its food and liquor at low prices. At night, food which had not been purchased was either given away to customers or thrown out. Free drinks were also given to customers on occasion. The respondent reconstructed the corporation's receipts for the period in issue by attributing a mark-up of 100 per cent to the sale of its products. This ratio was considered by *291 respondent's agents as the minimum applicable to a restaurant of this type after study of all factors in the operation of the business. No stockholder of the corporation, other than the petitioner, received dividends or compensation from the operation of the business during the years in question. On or about June 15, 1944, all of the stock of Swartz Grill, Inc., was sold by its shareholders to Manuel Martinez, Celestino Alverez and Juan Munoz for the sum of $18,000. The assets of the corporation were said to include all stock in trade, goods, wares, merchandise, chattels and fixtures, together with licenses, permits and good will of the business. Among the corporate assets not included in the sale were accounts receivable, which were assigned to the petitioner, and seven shares of stock of the American Distilling Company of a value of $2,480.35, which, under the agreement, could be purchased separately from the petitioner at the price the corporation paid for the stock. The purchasers paid the petitioner $2,480.35 for this stock. By the terms of the agreement, the purchasers were to repay to the petitioner rent paid in advance until April 30, 1945, in the amount of $125 monthly. The *292 purchasers paid this sum to the petitioner. The purchase agreement also provided: "That said corporation has made all reports and paid all taxes and excises of every kind and character required to be made and paid under and by virtue of the laws of the United States and the State of Ohio up to and including all reports and returns due June 1, 1944; that all such reports and returns due for the period beginning June 1, 1944 and ending when possession when said business is transferred to the purchaser herein will be made and paid by the seller, and said purchaser shall be saved harmless from any liability therefor." The corporate bank account in the People's Bank, Canton, Ohio, which was controlled by the petitioner, was not included with other corporate assets turned over to the purchasers in June 1944. This account was used for such corporate purposes as payroll payments, state insurance premiums, unemployment compensation payments, corporate taxes, social security payments, and purchases of whiskey, beer and food. The balance in this account at the close of May, June and July, 1944, was in excess of $13,000. After the sale of the stock, the check cashing activity in the petitioner's *293 Harter Bank & Trust Company account ceased and the balance declined from $42,000 to less than $15,000 in March 1946. The petitioner engaged in gambling and the Arco Tea Room, a separate establishment from the corporation's bar and grill, was used for gambling purposes. The purchasers of the corporation's stock took possession of the bar and grill and received such assets as its liquor license, fixtures, equipment and stock in trade. They continued to operate the bar and grill until February 1945. At that time, the corporationwas dissolved and the assets were distributed to the stockholders who continued the business as a partnership. The petitioner, Swartz, personally filed a petition for voluntary bankruptcy in October 1939, and was discharged of his debts as a bankrupt in January 1940. The value of his assets as listed by him in the bankruptcy proceedings aggregated $150. On December 31, 1940, his net worth totaled over $7,000 and increased to more than $64,000 by the close of 1944. Income in excess of $43,000 during the calendar years 1942 and 1943 is evidenced by the increases in the petitioner's net worth during this period. The petitioner reported the following amounts as *294 his income on his tax returns: 1941
$2,004.53
1942
1,947.94
1943
2,248.94
1944
2,796.30 During the period in question, the petitioner diverted unreported corporate receipts to his own use. The sales records of the corporation were incomplete and inadequate for purposes of reflecting its proper net income. The corporation's sales receipts were understated during the fiscal years ending June 30, 1942, 1943, and 1944, in the amounts of $12,093.06, $26,435.86 and $23,574.24. As of the close of the fiscal years ending June 30, 1942, 1943 and 1944, the corporation's assets and liabilities other than stock as reflected by it on its tax returns, were as follows: 6/30/42
6/30/43
6/30/44
ASSETS
Cash
$ 724.17
$1,853.52
$3,934.68
Inventories
525.00
545.00
690.00
Fixtures
191.71
Total Assets
$1,249.17
$2,398.52
$4,816.39
6/3//42
6/30/43
6/30/44
LIABILITIES
Accounts Payable
$ 225.00
$ 225.00
Accrued Expenses
73.57
125.19
Total Liabilities
$ 298.57
$ 350.19
Net Worth Per Re-
turn
$ 950.60
$2,048.33
$4,816.39 Liability for unpaid taxes as of these dates as determined by respondent aggregated $6,293.87 as *295 of the close of fiscal 1942; $28,866.05 as of fiscal 1943 and $50,462.56 as of June 30, 1944. As a result of these liabilities, the corporation was insolvent throughout the period in question. The respondent, on March 3, 1949, determined deficiencies and fraud penalties against the petitioner personally for the years here in question on the basis of increases in his net worth. These deficiencies have not been paid. The present case involves only the liability of petitioner as transferee of Swartz Grill, Inc. During the years here in question, the petitioner acquired from the insolvent corporation, without valuable consideration, and treated as his own, property and cash of a total value of at least $50,480.35, and he is, accordingly, liable as a transferee in equity for the deficiencies determined against the corporation in the total amount of $50,467.56. Opinion VAN FOSSAN, Judge: The initial question in this proceeding is whether the deficiencies determined against the petitioner's alleged transferor are proper. Petitioner has the burden of disproving the correctness of the deficiencies. It is respondent's burden to prove the petitioner's liability for such deficiencies *296 as a transferee. [1] The records of Swartz Grill, Inc. kept by the Association from information supplied by the petitioner were not adequate and did not properly reflect corporate income. Unexplained alterations and interlineations, all apparently arbitrary, were made to weekly sales records. The only sales evidence presented to the persons keeping the books were the ends of tapes, unidentified as to source. The record of sales receipts could not be reconciled with any bank account. The petitioner rejected an offer made by the Association which would have resulted in more accurate records being kept. Petitioner did not appear as a witness and no testimony was offered which would explain the inaccuracies of the corporate records. These facts and others relating to the unexplained increase in the managing stockholder's bank account in the Harter Bank & Trust Company leave us in no doubt that the corporation's sales records did not properly reflect its income. *297 The respondent determined that corporate purchase records were accurately kept. A mark-up of two to one was applied by the respondent to corporate purchases to determine sales receipts of the bar and grill. This formula was based upon the experience of restaurants similar to that owned by the corporation. It was considered the minimum applicable to a bar and grill of this type. The evidence does not disclose the prices paid by petitioner for particular products or brands of liquor nor the quantity of such sales but it appears from the record that prices charged by petitioner were kept low because of the competition of a factory cafeteria. Each day some of the food which was not purchased was given to customers and free drinks were also provided at times. All these factors were taken into consideration in the determination of the 100 per cent mark-up. No testimony of persons with knowledge of the factual situation in this regard was presented at the hearing. The petitioner has not shown that the respondent erred in the determination of corporate income. We turn then to the respondent's determination of petitioner's liability as a transferee of the corporation under section 311 of the Internal Revenue Code *298 . [2] The respondent urges that the petitioner is liable as a transferee both at law and in equity for the unpaid taxes of the corporation. *299 During the years in question, the petitioner conducted the check cashing activity of the corporation in his own banking account. The balance in this account, however, rose from approximately $7,000 at the beginning of the period in issue to more than $42,000 at its close. After the sale of his stock in the corporation, the regular activity in petitioner's account ceased and the balance declined. The only suggested possible source of income to the petitioner, other than the appropriation of corporate funds, was his gambling activity. Petitioner's claim that his increased net worth was due to gambling is not substantiated by the record. It is our opinion that the increase in his balance in the Harter Bank & Trust Company resulted from the diversion of corporate assets to his own use. The amount so diverted approximated $35,000 during the period in question. The petitioner obtained these assets without consideration at a time when the corporation was insolvent. The insolvency of the corporation throughout this period is demonstrated by a comparison of its assets and liabilities, including its liability for the deficiencies in unpaid taxes which, although later determined, must be included *300 in a determination of solvency for transferee purposes during this period. Scott v. Commissioner, 117 Fed. (2d) 36. The diversion of this sum of $35,000 qualifies petitioner as a transferee of the assets of an insolvent corporation without consideration and as such, he is subject in equity to the transferee liability under section 311, I.R.C. Terrace Corporation, 37 B:A. 263. Although, under the statute, the burden of proof of petitioner's liability as a transferee rests on the respondent, when respondent proved that there was an increase of $35,000 in petitioner's personal bank account and that petitioner retained and treated as his own a corporate bank account amounting to $13,000, it became petitioner's duty and burden to explain away the inference arising from such facts and a failure so to do dictates a finding of liability as a transferee. See Fada Gobins, 18 T.C. 1159, and cases cited therein. The contract of sale of corporate stock provided that seven shares of American Distilling Company stock owned by the corporation was not to be included in corporate assets but the purchasers could buy this stock from the petitioner *301 at the price the corporation had paid for this stock. The purchasers paid $2,480.35 to the petitioner to acquire these shares. This stock had been acquired by petitioner, without consideration, at a time when the corporation was insolvent. The amount received must be added to the petitioner's liability in equity as a transferee. The corporation's bank account in the People's Bank controlled by the petitioner and used for corporate purposes was not turned over to the purchasers of the stock. The petitioner's declaration to respondent's agent that this was his personal bank account is rebutted by the use to which the account was put. The balance carried in this account remained in excess of $13,000 during the period before and after the sale. No consideration was given by the petitioner for the continued use and appropriation of this fund belonging to the corporation. Inasmuch as the corporation was insolvent at this time, the sum of $13,000 must also be included within the petitioner's transferee liability in equity. The petitioner's receipt of corporate properties reduced the assets available for satisfaction of the claims of creditors, including the United States. The petitioner *302 as a stockholder in the corporation could not indirectly obtain additional consideration for the purchase of his shares by appropriating, without consideration, assets belonging to the insolvent corporation and disposing of these assets as his own property. The petitioner is liable as a transferee in equity for the taxes of Swartz Grill, Inc. to the extent of the value of the assets received by him without consideration as outlined above. Phillips v. Commissioner, 283 U.S. 589. Having reached this conclusion, we need not examine the petitioner's liability at law as a transferee. The petitioner urges that the respondent is estopped to assert the transferee liability determined against him. It is argued that the respondent must choose between taxing the petitioner as a transferee and taxing him personally on the same fund as income. The petitioner relies upon the United States v. Brown, 86 Fed. (2d) 798. The respondent determined deficiencies in income taxes and fraud penalties against the petitioner personally on March 3, 1949. These deficiencies have not been paid. On March 4, 1949, the deficiencies in question here were determined as the transferee liability *303 of the petitioner. The respondent agrees that the same income cannot be transferred corporate property impressed with a trust for creditors and at the same time be the personal income of the petitioner. Respondent asserts, however, that, under the fact, estoppel is not applicable here. We agree. The personal case has not been heard or reduced to a decision. The deficiencies in income taxes determined as the petitioner's personal liability have not been paid. Had these deficiencies been paid, the respondent would not be barred from asserting transferee liability as long as the petitioner was able to obtain a refund of the taxes paid. J. T. Wurtsbaugh, Transferee, 13 T.C. 1059, reversed on other grounds. Unlike the factual situation presented by United States v. Brown, supra, the determination of the personal liability has not been reduced to judgment nor has the respondent irrevocably elected to pursue that remedy. The determination of the deficiencies against the petitioner on his personal liability does not bar the respondent's determination of the petitioner's transfere liability. Decision will be entered for the respondent. Footnotes
1. SEC. 1119. PROVISIONS OF SPECIAL APPLICATION TO TRANSFEREES. (a) Burden of Proof. - In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.↩
2. SEC. 311. TRANSFERRED ASSETS. (a) Method of Collection. - The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds): (1) Transferees. - The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter. (2) Fiduciaries. - The liability of a fiduciary under section 3467 of the Revised Statutes, as amended, (U.S.C., Title 31, § 192) in respect of the payment of any such tax from the estate of the taxpayer. Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.↩